### Jim Sims v. The State.

#### No. 3821. Decided January 23, 1907.

**1.—Murder—Insanity—Charge of Court.**

Where upon trial for murder the evidence did not show that insanity was admitted or proved to exist or was continuing and permanent in its nature, the rule that insanity once admitted or proved is presumed to continue did not apply, and a general charge on insanity was sufficient.

**2.—Same—Non-Experts—Proper Predicate.**

Where upon trial for murder the testimony of the non-expert witnesses was not sufficient to lay a predicate upon which to base their opinion, it was error to admit in evidence the opinion of such non-expert witness.

Appeal from the District Court of Trinity. Tried below before the Hon. Gordon Boone.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Stevenson & Stevenson* and *Stevenson & Platt,* for appellant.—On question of insanity: Smith v. State, 19 Texas Crim. App., 95; Webb v. State, 5 Texas Crim. App., 596; Newberry v. State, 32 Texas Crim. Rep., 145.

On question of non-expert opinion: Betts v. State, 13 Texas Ct. Rep., 885; Taylor v. State, 14 Texas Ct. Rep., 577; Henderson v. State, 16 Texas Ct. Rep., 76; McLeod v. State, 31 Texas Crim. Rep., 331; Ellis v. State, 33 Texas Crim. Rep., 86; Williams v. State, 37 Texas Crim. Rep., 348.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant received the death penalty for the murder of his wife. The State's case substantially is that appellant, on the evening of the homicide, secured a shotgun and went to the point where he expected to meet his wife and awaited her coming. When she arrived he demanded of her certain title deeds to lands owned by them as community property. She declined to give him the deeds and he shot and killed her. They had not been living together for some time. The immediate facts are not controverted, as we understand the transcript.

The issue presented by appellant was insanity, and this from two standpoints: first, the court erred in not charging that where in-

sanity is once shown to exist, the presumption is that it continues to exist until the contrary is shown, and, second, that the court erred in admitting the testimony of certain witnesses who were non-experts without a sufficient predicate. The rule, we think, is correctly stated that where insanity is admitted or proved to exist it is presumed to continue, but this presumption, as we understand it, only arises in cases where the insanity is continuing and permanent in its nature, or where the cause of the disorder is continuing and permanent. For collation of authority see 22 Vol., Cyc., p. 116, and notes. We do not propose to enter into any discussion of this rule, for we deem it unnecessary in this case, as the facts do not show a case of that character of insanity. In this connection it may be stated that appellant had been troubled with an ulceration or sore of the spinal column, and had been treated successfully by a physician who testified in the case. The disease had been cured, but the doctor testified that it had left his mind "impaired." He had discharged his patient quite a while, many months, before the homicide. As an illustration, instances are given of the conduct, contracts, work and movements of appellant after he was discharged by the physician, covering practically the time intervening from the discharge by the physician up to the homicide. On one occasion he went to the physician and wanted a certificate to show that he would be exempt from working on the public roads. The testimony of the physician rather excludes the idea of insanity, but does leave the mind in an impaired condition. One or more of the witnesses testified of appellant working at a sawmill, handling saw-logs, and the witnesses testified that he did as much work as the average negro would do at that sort of work, with the same amount of intelligence, etc. Another witness testified as to his working on a farm, and as to obeying instructions and doing his work, etc. There is some testimony indicating that his mind was not exactly right, and sufficient testimony was introduced to authorize or even require the court to submit the issue of insanity, but not in our judgment from the standpoint claimed by appellant. In other words, we do not understand this record to show a clear case of insanity to have existed so as to require a charge on continuing insanity and the burden of proof in connection with that question. The court, however, did give a charge on insanity, which seems to be correct.

As to the second question, that is, that a proper predicate was not laid for the introduction of the State's rebuttal testimony of non-experts, we think same is well taken. By way of illustration, we will take the testimony of the witness, Cupe Lewis. The predicate recited in the bill upon which the opinion of this non-expert was given is as follows: "That he knew appellant and had known him since April of this year," that is, 1906. This conviction occurred on August 22, 1906. "That defendant was working at the house of witness in the town of Groveton, that is, about a mile from Groveton; that he ordered appellant to do different things around the farm and

that appellant was working the crop. Tom Scott had appellant hired working in the crop and he would come there and witness would tell him what work Tom wanted him to do and he would do it; that at times witness never had anything to do with defendant; that appellant was on the place of witness and passed in and through the farm, being there about twice a day, that is, in the morning and in the evening to go to work, and witness would tell him in the morning what Tom Scott wanted him to do, and he would do it; that witness went about his own business and would not be about appellant any more; that witness might see appellant passing through the lot in the evening going home." We do not believe, under our authorities, this is a sufficient predicate. On this predicate, however, this witness testified that the actions of defendant did not indicate to his mind insanity, but that appellant was of sound mind and not crazy; that the appellant seemed to be perfectly all right and perfectly bright; that from the conduct and actions of appellant witness regarded him as an intelligent negro.

Another non-expert witness was Alexander, who stated, as a predicate, that he had known appellant about two years or longer; he knew him in Houston County; that he had in the last two years seen appellant frequently; that he saw him at church, and that defendant was a member of the church. This is a predicate upon which this witness was permitted to give his non-expert opinion as to the sanity of the appellant. The same may be said as to the witness Hackett; at least the evidence forming the predicate for Hackett's opinion could and should have been more full. Without going into a discussion of this question, we cite the following authorities, in which the matter was fully discussed. Betts v. State, 13 Texas Ct. Rep., 885; Henderson v. State, 16 Texas Ct. Rep., 76; Williams v. State, 37 Texas Crim. Rep., 348; and McLeod v. State, 31 Texas Crim. Rep., 331. This is sufficient citation of authorities. For the reasons indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*